UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

ZEIGA GREEN #54806                    CIVIL ACTION NO. 23-cv-1360

VERSUS                                JUDGE S. MAURICE HICKS, JR.

JULIAN WHITTINGTON ET AL              MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

### Introduction

Zeiga Green ("Plaintiff") is a self-represented pretrial detainee who filed this action against the Bossier Parish sheriff and several deputies based on allegations of excessive force and denial of medical care at the Bossier Maximum Security facility. Before the court is Defendants' Motion for Summary Judgment (Doc. 29). For the reasons that follow, it is recommended that the motion be granted in part and denied in part.

### Excessive Force Claims

**A. Introduction**

Plaintiff's original and amended complaints are primarily dedicated to claims of excessive force against Deputies Jones, Godfrey, and Figueroa; they add a brief assertion that medical care was denied. Defendants' motion for summary judgment asks that all claims against them be dismissed. But Defendants' memorandum in support of the motion, although it describes the facts related to the excessive force incident, does not include a direct attack on the excessive force claims. The memorandum includes two sections devoted to attacking the medical claims and one arguing that Sheriff Whittington should

be dismissed for lack of personal involvement, but there is no section of the memorandum that addresses excessive force.

The exhibits to the motion include unsworn incident reports regarding the use of force. Affidavits from Major Brad Anderson and Sgt. John Carroll are attached, but they address only the medical claims. Thus, it is not clear whether Defendants are actually seeking summary judge on the excessive force claims. To the extent Defendants are attacking the excessive force claims, their motion should be (1) denied with respect to the claims against the deputies who were involved in the incident and (2) granted with respect to the claims against the sheriff, warden, and deputy warden, as will be addressed in the section of this recommendation regarding supervisory officials.

### B. Due Process Clause Governs

Plaintiff was a pretrial detainee, so his excessive force claims are governed by the Due Process clause. "[A] pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, 135 S.Ct. 2466, 2473 (2015). Objective reasonableness turns on the facts and circumstances of each particular case, and a court must make the determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight. Id.

A non-exclusive list of factors that may bear on the reasonableness or unreasonableness of the force used include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem

at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." Id.

### C. Summary Judgment Burdens

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A fact is "material" if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Anderson, supra; Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine dispute of a material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

### D. Analysis

Defendants attach to their motion unsworn reports prepared by Deputies Jones, Godfrey, Figueroa, and Carroll. They state that Jones and Godfrey were distributing the morning meal when Plaintiff approached and complained, "I did not get my milk and orange." Jones wrote in his report that he told Plaintiff that the deputies would review the

cameras to determine whether he received the items, but Plaintiff continued to complain until he was ordered to go to his cell. Plaintiff finally complied, but he cursed as he did so.

The deputies wrote that they later went to Plaintiff's cell to tell him that he was being rehoused to E Pod due to disrespect. Plaintiff refused to pack his belongings and continued to eat, saying, "Y'all not going to rush me." Plaintiff was ordered to turn around and place his hands behind his back, but he said, "Naw man I ain't doing that." Jones wrote that he attempted to grab Plaintiff's right arm to place him in handcuffs, but Plaintiff jumped back in the corner an attempted to raise his arms to avoid the cuffs. This began a physical struggle that spilled outside of the cell. Sgt. Carroll responded to the scene and assisted with taking Plaintiff to the ground so that he could be cuffed. Plaintiff continued to resist, but the deputies were able to eventually get him handcuffed after the use of knee strikes and similar efforts to get Plaintiff under control. Plaintiff allegedly continued to curse the deputies throughout the incident. Sgt. Carroll wrote in his report that Plaintiff continued to struggle with the deputies after he was handcuffed and, after they took him to E Pod, Plaintiff attempted to kick Deputy Figueroa and otherwise resist the deputies. The handcuffs were eventually removed. The deputies were evaluated for injuries, with none reported.

Plaintiff's original complaint ended with: "I declare under penalty of perjury the above statements are true." His amended complaint (Doc. 5) stated at the end, "Declared under penalty of perjury." The facts put forth in a verified complaint may be treated as if in an affidavit on summary judgment if they are within the personal knowledge of the affiant and would otherwise be admissible into evidence. Huckabay v. Moore, 142 F.3d

233, n. 6 (5th Cir. 1998). A federal statute, 28 U.S.C. § 1746, provides that when any matter is permitted to be supported by a sworn declaration or affidavit, such matter may "with like force and effect" be established by the unsworn declaration in writing of the person if made in substantially the following form: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date)." Plaintiff's complaints include statements that are in substantial compliance with the statute, so the facts alleged in them may be competent summary judgment evidence. Hart v. Hairston, 343 F.3d 762 n. 1 (5th Cir. 2003) (facts sworn to under 28 U.S.C. § 1746 have been recognized as competent summary judgment evidence).

Plaintiff alleged in his original complaint that deputies Jones and Godfrey opened his cell door and directed him to pack his property to go to E Pod. Plaintiff alleged that he asked why, but the deputies refused to answer, and Jones said, "I know how to deal with a wise guy." Jones, with assistance from Godfrey, then aggressively grabbed Plaintiff as Plaintiff sat eating his breakfast and "twisted on both arms trying to handcuff me and slam me to the ground." Plaintiff alleged that he stood up as Jones and Godfrey "aggressively pulled me in both directions and kicking me on my legs." As the encounter moved outside of the cell, Jones and Godfrey "started striking me while continuing to force me to the ground." Plaintiff stated that he did not act aggressively in response to the use of force.

Plaintiff alleged that Deputy Figueroa, after Plaintiff was on the ground, pushed Plaintiff's face into the pavement while Jones and Godfrey kneed Plaintiff repeatedly with maximum force in his side. Sgt. Carroll, who had also arrived, and Figueroa "twisted my arms behind my back causing intense pain." Plaintiff wrote that after he was handcuffed

and taken to E Pod, Jones, Figueroa, and Godfrey "slammed me to the floor face first," and Jones put his arm around Plaintiff's neck "and started choking me." Godfrey continued to twist Plaintiff's handcuffed arms while Figueroa forced Plaintiff's legs up to his back and sat on them. Plaintiff stated that the entire attack was unprovoked. When Sgt. Carroll came to the E Pod cell, the deputies eased up and acted as if they were trying to remove the handcuffs. Plaintiff wrote that he told Carroll what had happened, and Carroll responded that his deputies were always right. Plaintiff's amended complaint largely repeats the key allegations regarding the force incident.

To the extent Defendants are seeking summary judgment with respect to the excessive force claims, it is questionable whether they satisfied their initial summary judgment burden. They offer only unsworn incident reports from Jones, Godfrey, and Figueroa. Sgt. Carroll offers an affidavit, but he addressed only the medical care claims. Major Brad Anderson offers an affidavit that was also directed primarily to the medical claims. He closed with a statement that he has read the motion for summary judgment and exhibits and certifies that the information contained in them is true and correct and accurately reflects the reports made of the incident. There is no indication, however, that Anderson has any personal knowledge of the use of force incident.

On the other hand, Plaintiff offers specific facts in his verified complaints that depict a number of the defendants engaging in excessive force. Plaintiff's opposition (Doc. 32) to the motion includes similar statements that Plaintiff did not resist or act aggressively. The deputies punched, kicked, and kneed him, slammed his head into the concrete, and twisted his arms behind his back without provocation in Plaintiff's version of the events.

Those statements in the memorandum are accompanied by a declaration "under penalty of perjury that the forgoing information/facts are true and correct to the best of my knowledge." The opposition is also accompanied by a "affidavit" that Plaintiff states is made "of my own personal knowledge under the penalty of perjury." It generally alleges that he was "viciously battered" by the named deputies and denied medical attention afterwards.

Plaintiff's verified complaints and other submissions made in substantial compliance with Section 1746 are sufficient to create a genuine issue of material fact with respect to the excessive force claims against Deputy Jones, Deputy Godfrey, Deputy Figueroa, and Sgt. Carroll. See Falcon v. Holly, 480 Fed. Appx. 325, 326 (5th Cir. 2012) (prisoner's verified complaint survived summary judgment where it made specific allegations of excessive force that disputed TDCJ's evidence) and Hart v. Hairston, 343 F.3d 762, 765 (5th Cir. 2003) (verified allegations in a prisoner's complaint were competent evidence to counter a disciplinary report and survive summary judgment).

**Medical Care**

Plaintiff alleged in his original complaint that, after the incident, he asked for medical treatment that was denied. His amended complaint made a similar brief assertion that he "then asked for medical treatment and was refused." Plaintiff stated in his summary judgment declaration/affidavit that Sgt. Carroll told him that no medical staff was then in the building, but he would be seen once staff arrived. Plaintiff asserted that he never saw medical staff for his injuries despite multiple requests.

Defendants attack the medical care claims on the merits and for failure to exhaust administrative remedies. Sgt. Carroll testified in an affidavit that Plaintiff was offered medical attention on the date of the incident, and Plaintiff did not submit a medical request form or follow the appropriate steps required to be seen by medical. Major Anderson testified in an affidavit that Plaintiff "did not file any ARP's regarding denial of medical attention related to this incident." He echoed Carroll's testimony that Plaintiff was offered medical attention on the date of the incident, but Plaintiff did not submit a medical request form and failed to follow the appropriate steps required to be seen by medical.

The court elects to dispose of the claim based on the lack of administrative exhaustion. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The statute's reference to actions "with respect to prison conditions" is interpreted broadly so that the exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 122 S.Ct. 983 (2002). The statute requires proper exhaustion in accordance with prison or jail procedures. Woodford v. Ngo, 126 S.Ct. 2378 (2006).

The level of detail required in a grievance is based on the prison or jail's requirements, and not that of the federal statute. Jones v. Bock, 127 S.Ct. 910, 923 (2007). Failure to exhaust is an affirmative defense, so the burden is on the defendant to demonstrate that the plaintiff failed to exhaust available remedies. The defendant must

Page 8 of 14

establish beyond peradventure all of the essential elements of the defense of failure to exhaust. Logan v. Whittington, 2020 WL 4812698 (W.D. La. 2020).

In light of that burden, the exhaustion defense is best presented by a motion for summary judgment that is supported by an affidavit from the official who administers the ARP system. That official should testify about the existence and terms of the ARP plan in place at the relevant time, attach certified copies of any filing that the prisoner did make (together with responses thereto), and certify that a diligent check of the relevant records revealed no other grievance or appeal by the prisoner with respect to the claims at issue. Other relevant evidence may include how inmates are informed of the ARP plan and evidence, if any, that the plaintiff acknowledged receipt of that information. Logan v. Whittington, supra; Stephens v. Prator, 2017 WL 3775953 (W.D. La. 2017) (describing the hallmarks of a proper motion for summary judgment on the exhaustion defense).

Defendants have not presented a copy of the grievance rules or testimony regarding how the grievance procedure worked at the relevant time or what was required to be included in a grievance. They offer only Major Anderson's testimony that Plaintiff did not file any ARP regarding denial of medical attention related to this incident. They also offer a copy of Plaintiff's grievance and the responses to it.

Plaintiff's grievance asserted that on June 25, 2023 Jones, Godfrey, Figueroa, and Carroll "used extreme force against me" after Plaintiff forgot his orange and milk at breakfast. Plaintiff went on to allege that the deputies battered him excessively and unnecessarily. The grievance made no mention of a request for medical care, denial of medical care, or any particular injuries that warranted treatment. The responses at both

levels of review stated that, after review of video and reports, it was determined that enough force was used to gain compliance.

Plaintiff attached the same grievance and responses to his memorandum in opposition. His declaration stated that jail "officials denied plaintiff's ARP's for medical assistance/treatment after the incident," and his statement of contested facts (which was neither sworn nor certified pursuant to Section 1746) asserted, "Plaintiff clearly filed a ARP about denial of medical care and Warden's/defendant's failed to respond to it." But Plaintiff attached only the same grievance submitted by the defense, which shows that he complained only about excessive force.

If a claim presented in a lawsuit is unexhausted, the court should dismiss the unexhausted claim and proceed only with the properly exhausted claims. Jones, 127 S.Ct. at 923-26. Jones explained that the level of detail required in a grievance is that required by the jail's grievance policy. Defendants have not presented evidence of that requirement, but it is uncontested that a grievance policy was in place at the relevant time, and it must have required at least some reference to a claim to properly present and exhaust it.

The Fifth Circuit in Johnson v. Johnson, 385 F.3d 503 (5th Cir. 2004) held that a grievance must provide administrators with a "fair opportunity under the circumstances to address the problem that will later form the basis of the suit." Id. at 522. The Court has continued to apply Johnson's "fair opportunity" standard after Jones v. Bock. See Zebrowski v. U.S. Fed. Bureau of Prisons, 558 Fed. Appx 355, 360 (5th Cir. 2014); Garcia-Comacho v. Maldonado, 243 Fed. Appx. 880 (5th Cir. 2007).

In <u>Johnson</u>, the Texas administrative requirements directed inmates to write briefly and clearly to provide specific information and facts about their grievance. A black homosexual prisoner complained that prison officials failed to protect him from repeated sexual assault. He presented administrative grievances and then filed suit against several defendants and on a number of theories. Some of his claims were deemed to have been satisfactorily exhausted, but his claim of race discrimination was not. His grievances nowhere stated that he was suffering racial discrimination and did not mention his race at all. The Fifth Circuit held that his grievances did not adequately alert prison officials to a race-related problem and allow them an opportunity to address it. The race discrimination claim was, therefore, dismissed. <u>Johnson</u>, 385 F.3d at 518. Exhaustion was also lacking in <u>Zebrowski</u>, 558 Fed. Appx. at 360, where the grievance made vague references to "an act of cahoots of retaliation" but did not raise the retaliation claim that the prisoner raised in his judicial complaint.

Plaintiff's grievance was specific that it was regarding an excessive force incident on a particular date. It made no mention of a request for medical care, denial of medical treatment, or any injury that would reasonably require medical care. Plaintiff did not, therefore, properly exhaust a medical care claim before he filed suit. His assertions to the contrary are conclusory, and conclusory assertions even when made under oath or pursuant to Section 1746, are not competent summary judgment evidence. <u>Ortega Garcia v. United States</u>, 986 F.3d 513, 533 (5th Cir. 2021) (a plaintiff opposing summary judgment "cannot rely on '[c]onclusory allegations, speculation, and unsubstantiated assertions'" to meet his burden). Plaintiff's evidence on this point is conclusory and is contradicted by the

grievance documents that he submitted. Defendants are entitled to summary judgment dismissing without prejudice all claims based on denial of medical care. Bargher v. White, 928 F.3d 439, 447 (5th Cir. 2019) (dismissal without prejudice is the appropriate remedy for failure to exhaust).

**Sheriff Whittington, Warden Jacobs, and Deputy Warden Evans**

Sheriff Whittington moves for summary judgment on the grounds that Plaintiff makes no claim that he was personally involved in any of the events that are the basis of the complaint. "Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987). Thus, a prisoner must show that a warden or other supervisor was personally involved in the acts that deprived the prisoner of his constitutional rights. Thompson v. Upshire County, 245 F.3d 447, 459 (5th Cir. 2001).

Sheriff Whittington is correct that nothing in the complaint or amended complaint alleges any personal involvement by him. His only mention is in the caption of the pleadings and the list of defendants. The same is true of Warden Linton Jacobs and Deputy Warden Anthony Evans. Plaintiff's only other mention of any of these three supervisors is in his (unsworn) statement of contested facts that asserts he was battered by the deputies identified above, "approved by (Sheriff) Julian Whittington, Linton Jacobs, and Anthony Evans." This bare, unsworn, and conclusory assertion that the supervisor "approved" the action is not enough to create a genuine issue of material fact with respect to a claim against any of those three defendants.

Only Sheriff Whittington has moved for summary judgment on this ground, but the court may grant summary judgment to Jacobs and Evans sua sponte so long as Plaintiff is given notice and an opportunity to present relevant summary judgment evidence. Atkins v. Salazar, 677 F.3d 667, 678 (5th Cir. 2011); Markel American Ins. Co. v. Verbeek, 657 Fed. Appx. 305, 310 (5th Cir. 2016). That notice and opportunity is now afforded.

When Plaintiff opposed the motion for summary judgment, he presented evidence relevant to the deputies involved in the incident and described the events in some detail, but his evidence never mentioned any involvement by these three supervisors. There is, therefore, little reason to believe that Plaintiff has such evidence. Plaintiff is placed on notice that it is recommended that summary judgment be rendered as to all claims against not only Sheriff Whittington but also Warden Linton Jacobs and Deputy Warden Anthony Evans unless, within the time for filing objections to this report and recommendation, he points to allegations in his complaint or amended complaint of personal involvement by Jacobs or Evans and submits competent summary judgment evidence to support such allegations. This procedure is consistent with Fed. R. Civ. Pro. 56(f), which allows the court to, after giving notice and a reasonable opportunity to respond, grant summary judgment for a non-movant or grant a motion on grounds not raised by a party.

Accordingly,

It is recommended that Defendants' Motion for Summary Judgment (Doc. 29) be granted in part by (1) dismissing with prejudice all claims against Julian Whittington, Linton Jacobs, and Anthony Evans and (2) dismissing without prejudice all claims for denial of medical care due to failure to exhaust administrative remedies prior to bringing

suit. It is further recommended that the motion be denied with respect to the excessive force claims against Sean Godfrey, Javarious Jones, John Carroll, and Jaime Figueroa.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 13th day of August, 2024.

Mark L. Hornsby
U.S. Magistrate Judge